**FILED**
**Dec 12, 2024**
**02:43 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**





## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT COOKEVILLE

| | | |
|---|---|---|
| **CHRISTOPHER WILLIAMS,** | ) | **Docket No.: 2022-04-0300** |
| **Employee,** | ) | |
| **v.** | ) | **State File No.: 7785-2021** |
| **DANA HOLDING CORP.** | ) | |
| **Employer,** | ) | **Judge Robert Durham** |
| **And** | ) | |
| **HARTFORD INSURANCE CO.,** | ) | |
| **Insurer.** | ) | |

---

### EXPEDITED HEARING ORDER GRANTING BENEFITS

---

The Court held an Expedited Hearing on December 3, 2024. Mr. Williams requested an order that Dana authorize medical care for injuries to his right ankle, leg, knee, and shoulder that he asserts are natural and foreseeable consequences of his December 2020 left-shoulder work accident. The Court holds that Dana did not establish that Mr. Williams's negligence broke the causal connection between these claimed injuries and his work injury. Further, Mr. Williams is likely to prove at trial that he is entitled to reasonable and necessary medical care for any injuries that are natural and foreseeable consequences of his December 2020 accident.

### History of Claim

On December 21, 2020, Mr. Williams suffered a left-rotator cuff tear at work. Dana accepted the claim and authorized Dr. James McKinney to treat the shoulder. After conservative care, Dr. McKinney surgically repaired the rotator cuff.

While treating, Mr. Williams returned to work performing duties with only his right hand. He then developed carpal tunnel syndrome in his right arm due to overuse. Dr. McKinney performed a carpal tunnel release and an exploration surgery with decompression in the right-forearm muscle.

The exploration resulted in a hernia at the incision site, causing the muscle to bulge

1

through when Mr. Williams used his arm. He also complained of pain that he described as having several "sweat bees" stinging him along the incision site when he engaged in any type of gripping activity or muscular use of his forearms.

Dana authorized Dr. McKinney to repair the hernia using mesh. Despite the repair, a small bulge remained, and Mr. Williams still complained of pain at the incision site when lifting heavy objects. Dr. McKinney released Mr. Williams at maximum medical improvement on April 12, 2022, with restrictions of "no lifting or gripping greater than 10 lbs. with either arm."[1]

Eight days later, Mr. Williams was at home changing an outdoor lightbulb. He testified the light fixture was approximately seven feet high. He placed a three-step aluminum ladder, which he estimated weighed no more than six pounds, under the light. He climbed the ladder so that his left foot was on the second step and his right on the third. As he reached up with his right hand to change the bulb, he felt an intense, burning sensation in his right forearm. The pain caused him to hurry down the ladder, and as he did so, he lost his balance and fell. He testified that he never gripped the ladder tightly and only used his hands for balance.

Mr. Williams went to the emergency room immediately after the fall, where it was determined that he broke his right leg and injured his right shoulder.[2] Orthopedist Dr. Roy Terry performed emergency surgery on the leg, inserting screws to stabilize the break.

Mr. Williams then developed an infection in his right leg, which required multiple surgeries and a lengthy hospital stay to clear. Afterward, Dr. Terry began treatment for Mr. Williams's right shoulder, and again after multiple surgeries ultimately performed a partial shoulder replacement.

At the hearing, Mr. Williams asserted that he now has post-traumatic arthritis in his right knee, which Dr. Terry believes may require a total knee replacement. Dr. Terry confirmed that Mr. Williams may need a knee replacement in an October 2023 response to a questionnaire.

Mr. Williams also testified that Dr. Terry feels that a total right-shoulder replacement may be necessary because of his continued motion limitations. He further said that he has foot drop due to nerve damage from his battle with infection, and Dr. Terry recommended a tendon transfer to correct the condition.

---

[1] Dana agreed that Mr. Williams's December 2020 left-shoulder and right-forearm injuries were compensable. Dr. McKinney retired, and Dana has authorized Drs. John Cornelius and Adam Cochran to treat those injuries. The parties did not introduce records or opinions from either doctor.
[2] The parties did not include any medical records from Mr. Williams's post-fall treatment. Mr. Williams testified without objection to Dr. Terry's diagnoses, past treatment, and treatment recommendations.

As for causation, Mr. Williams relied on a questionnaire completed by Dr. Terry in September 2024. Dr. Terry checked "yes" to a question about whether Mr. Williams's injuries to his "right leg, right knee, right ankle and right shoulder as a result of [his] fall on or about April 20, 2022" was the "direct and natural consequence" of his December 2020 injury. He also marked "yes" when asked if Mr. Williams's injuries "as a result of the April 20, 2022 fall primarily arise out of and the course and scope of Mr. Williams's employment."

Mr. Williams did not submit any evidence about the reasonableness and necessity for expenses incurred in Dr. Terry's treatment for his alleged work-related injuries. He is not currently seeking temporary disability benefits.

**Findings of Fact and Conclusions of Law**

To obtain his requested treatment, Mr. Williams does not have to prove at this stage "every essential element" of his claim by a preponderance of the evidence. Instead, he must show a likelihood of prevailing at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2024).

Here, the threshold question is whether Mr. Williams's fall in April 2022 was the "natural and foreseeable consequence" of his December 2020 work injury. The Tennessee Supreme Court recently addressed this principle in *Hudgins v. Global Personnel Solutions, Inc.,* No. E2023-00792-SC-R3-W, 2024 Tenn. LEXIS 86, at *14 (Tenn. Workers' Comp. Panel Mar. 5, 2024). *Hudgins* held that:

> As long as the subsequent injury that is alleged to be a "natural consequence" flowing from a compensable injury can be shown to have arisen primarily out of and in the course and scope of employment, it, too, will be compensable under the Reform Act. This requires a finding . . . that the employment contributed more than fifty percent in causing an injury subsequent to a compensable injury for it to also be compensable.

Given that the "natural consequence" rule survives, it follows that an employer may still defend against it "by showing that the actions of the employee leading to the subsequent injury constituted negligence, recklessness, or intentional conduct that broke the chain of causation." *Braden v. Mohawk Indus., Inc.,* 2022 TN Wrk. Comp. App. Bd. LEXIS 11, at *16 (Mar. 1, 2022).

Here, Dana asserted that when he climbed the ladder, Mr. Williams knowingly violated Dr. McKinney's restrictions against carrying or gripping more than ten pounds with either hand. It argued that this violation led to his fall and was negligent, reckless, or intentional conduct that broke the chain of causation. Thus, the Court should deny Mr. Williams's claims for injuries resulting from his fall.

However, Dana did not provide any evidence that Mr. Williams violated Dr. McKinney's restrictions. Mr. Williams's unrefuted evidence was that the stepladder weighed no more than six pounds. Dana argued that simply climbing the ladder required gripping more than ten pounds, but it did not provide any evidence this was the case. Mr. Williams said that he only used his hands for balance, and the Court has no reason to disbelieve his testimony.

The Court finds that climbing two steps on a small stepladder to change a lightbulb seven feet high does not in and of itself constitute "negligence, recklessness, or intentional conduct" sufficient to break the chain of causation in this case.

Although Dana's negligence defense is not enough to deny the request for additional benefits, Mr. Williams must still prove that the April 2022 fall "contributed more than fifty percent" in causing his need for Dr. Terry's past and recommended treatment. Further, he must do so to a "[r]easonable degree of medical certainty," which means in a physician's opinion "it is more likely than not considering all causes, as opposed to speculation or possibility." Tenn. Code. Ann. § 50-6-102(A)-(D).

In attempting to meet this burden, Mr. Williams submitted a causation letter where Dr. Terry checked "yes" to questions of whether Mr. Williams's injuries to his right ankle, leg, knee and shoulder were the "direct and natural consequence" of his December 2020 injury and if those injuries "primarily arise" out of his employment. Mr. Williams also testified about Dr. Terry's treatment and what he recommended next.

However, this was the extent of Mr. Williams's causation proof. He did not offer Dr. Terry's medical records. Other than the October 2023 causation letter that states Mr. Williams may need a total knee replacement, the letters do not describe which treatment he has already received, the additional treatment Dr. Terry is recommending, or why Mr. Williams requires further treatment for injuries caused by his fall. The Court is left only with Mr. Williams's lay testimony of what Dr. Terry told him.

Given the lack of evidence, the Court cannot find that Mr. Williams is likely to prove entitlement to reimbursement for his past medical expenses for Dr. Terry's treatment or to future treatment recommended by him.

But that does not end the analysis. The Appeals Board has long held that a lack of medical evidence about causation does not necessarily eliminate the employer's obligation to offer a physician panel. *Hawes v. McLane Co., Inc.*, 2021 TN Wrk Comp. App. Bd. LEXIS 30, at *10 (Aug. 25, 2021).

Here, the Court holds that, although the evidence is insufficient to establish causation, it is enough to obligate Dana to submit a panel of orthopedists from which Mr.

Williams may choose an authorized physician.  This doctor shall provide reasonable and necessary care for any injuries that primarily arose out of Mr. Williams's fall.

Mr. Williams has also requested attorneys' fees under Tennessee Code Annotated section 50-6-226(d)(1)(B) on the grounds that Dana unreasonably denied his request for benefits.  The Workers' Compensation Appeals Board has encouraged consideration of attorneys' fees at the end of the claim, and the Court must heed the Appeals Board's instruction at this time.  *Andrews v. Yates Servs., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 35, at *7-8 (May 23, 2017).

IT IS, THEREFORE, ORDERED:

1. Dana shall offer a panel of orthopedists, from which Mr. Williams may choose an authorized physician to provide reasonable and necessary treatment for any injuries primarily caused by his fall.

2. This case is set for a Scheduling Hearing on **February 12, 2025 at 10:00 a.m. Central Time**.  The parties must call 615-253-0010.  Failure to appear might result in a determination of the issues without the party's participation.

3. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3).  The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order.  Failure to submit the necessary confirmation within the period of compliance might result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email at WCCompliance.Program@tn.gov.

**ENTERED December 12, 2024.**

**ROBERT DURHAM, JUDGE**
**Court of Workers' Compensation Claims**

5

**APPENDIX**

<u>Exhibits:</u>

1. September 2024 causation letter from Dr. Terry
2. October 2023 causation letter from Dr. Terry
3. Dr. James McKinney's medical records
4. Dr. McKinney's C-30A medical report
5. Permanent restrictions assigned by Dr. McKinney
6. Picture of ladder

**CERTIFICATE OF SERVICE**

I certify that a copy of the Order was sent as indicated on December 12, 2024.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Lauren Ray | | | X | Lray@forthepeople.com |
| Teri Bernal | | | X | Terri.bernal@qpwblaw.com |

_____

**PENNY SHRUM, Court Clerk**
**WC.CourtClerk@tn.gov**



<u>Right to Appeal</u>:

If you disagree with the Court's Order, you may appeal to the Workers' Compensation Appeals Board.  To do so, you must:

1. Complete the enclosed form entitled "Notice of Appeal" and file it with the Clerk of the Court of Workers' Compensation Claims before the expiration of the deadline.
    ➤ If the order being appealed is "expedited" (also called "interlocutory"), or if the order does not dispose of the case in its entirety, the notice of appeal *must* be filed *within seven (7) business days* of the date the order was filed.
    ➤ If the order being appealed is a "Compensation Order," or if it resolves all issues in the case, the notice of appeal *must* be filed *within thirty (30) calendar days* of the date the Compensation Order was filed.
   When filing the Notice of Appeal, you must serve a copy on the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing the Notice of Appeal.  Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service.  In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee.  You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal.  **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You are responsible for ensuring a complete record is presented on appeal.  If no court reporter was present at the hearing, you may request from the Court Clerk the audio recording of the hearing for a $25.00 fee.  If you choose to submit a transcript as part of your appeal, which the Appeals Board has emphasized is important for a meaningful review of the case, a licensed court reporter must prepare the transcript, and you must file it with the Court Clerk.  The Court Clerk will prepare the record for submission to the Appeals Board, and you will receive notice once it has been submitted.  For deadlines related to the filing of transcripts, statements of the evidence, and briefs on appeal, see the applicable rules on the Bureau's website at https://www.tn.gov/wcappealsboard. (Click the "Read Rules" button.)

4. After the Workers' Compensation Judge approves the record and the Court Clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties.

   **If neither party timely files an appeal with the Appeals Board, the Court Order becomes enforceable.  See Tenn. Code Ann. § 50-6-239(d)(3) (expedited/interlocutory orders) and Tenn. Code Ann. § 50-6-239(c)(7) (compensation orders).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



**NOTICE OF APPEAL**
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury:** _____

_____
**Employee**

v.

_____
**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies). Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____     ☐ Motion Order filed on _____

☐ Compensation Order filed on_____     ☐ Other Order filed on_____

issued by Judge _____.

**Statement of the Issues on Appeal**
Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____
_____
_____
_____

**Parties**
**Appellant(s)** (Requesting Party): _____ ☐ Employer ☐ Employee
Address: _____ Phone: _____
Email: _____
Attorney's Name: _____ BPR#: _____
Attorney's Email: _____ Phone: _____
Attorney's Address: _____
*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐ Employer ☐ Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____
*[Signature of appellant or attorney for appellant]*